IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| EDNA F. GENTRY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:00-CV-101 |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision discontinuing plaintiff's disability insurance benefits under Title II of the Social Security Act. For the reasons that follow, defendant's motion for summary judgment [doc. 19] will be granted, and plaintiff's motion for judgment on the pleadings [doc. 17] will be denied. The final decision of the Commissioner will be affirmed.

I.

*Procedural History*

Plaintiff initially applied for benefits in the mid-1980s citing back and arm problems secondary to a 1984 automobile accident. She received a hearing before Administrative Law Judge Harry Rowlett. Judge Rowlett subsequently issued a written decision on December 14, 1988, concluding that plaintiff was eligible for benefits due to her

"severe musculoskeletal impairment to the cervical spine and right upper extremity." [Tr. 20-23].

By letter dated December 5, 1997, the Commissioner notified plaintiff that her benefits would be terminated due to medical improvement. [Tr. 39]. Plaintiff sought reconsideration, citing head and neck pain and claiming that she "can't lift [her] arms." [Tr. 44]. Reconsideration was denied [Tr. 74], and plaintiff then requested a hearing, which took place before Administrative Law Judge William Overton (hereinafter "the ALJ") on February 11, 1999.

On March 10, 1999, the ALJ issued a decision discontinuing benefits. Therein, he concluded that plaintiff, due to medical improvement, no longer suffers from a "severe" impairment. [Tr. 12-17]; *see also Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997). Plaintiff was accordingly found to be no longer under a disability as of December 1, 1997.

Plaintiff then sought review from the Commissioner's Appeals Council. Review was denied on February 11, 2000. [Tr. 5]. An appeal to this court followed. By order dated September 15, 2000, District Judge Thomas Hull remanded this case for consideration of a March 1998 office record of Dr. Fred Knickerbocker. [Tr. 228-34].

On remand, plaintiff received another administrative hearing in March 2001. The ALJ subsequently issued another written decision, considering Dr. Knickerbocker's 1998 record as directed by Judge Hull. The ALJ again concluded that plaintiff's benefits

2

should be terminated due to medical improvement. [Tr. 192-200].

Plaintiff again sought review from the Appeals Council, and review was denied. [Tr. 182]. The case is again before this court for review.

II.

*Relevant Background*

Plaintiff was born in 1946 and has a seventh grade education. [Tr. 171]. She previously worked as a "rip saw tailer." [Tr. 93].

Plaintiff is able to go fishing weekly, although allegedly only when the weather and her health permits. [Tr. 33, 47, 104-05, 177].[1] She can babysit her grandchildren [Tr. 66, 107], cook [Tr. 66, 104, 176], and attend church at least three times per week. [Tr. 33, 47, 66, 178]. She can do some housecleaning, but purportedly must take frequent breaks and needs assistance with heavier tasks. [Tr. 47, 104, 107, 176]. At her most recent administrative hearing, plaintiff testified that she can no longer attend church regularly or fish because she is "just weak and dizzy." [Tr. 219].

Plaintiff has stated repeatedly that she "can't afford to go" to the doctor [Tr. 34, 49, 99, 102, 172, 218], yet has been able to fund a one and one-half pack per day smoking habit since the early 1960s. [Tr. 123, 127]. Plaintiff offers no explanation for this inconsistency, and the contention that she "can't afford to go" to the doctor is simply not believable. *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 477, 480-81 (6th Cir.

---

[1] The court notes that plaintiff goes fishing with her husband [Tr. 105], who apparently also receives disability benefits due to back and breathing complaints. [Tr. 105, 170].

3

1988).

Plaintiff takes Tylenol P.M. for pain [Tr. 34], but subsequent to the notice of benefits termination she obtained prescription pain medication. [Tr. 65, 110, 164]. Plaintiff complains of pain, weakness, and numbness in her right arm, stating specifically that "I don't have any strength in my arms." [Tr. 104, 172-73]. The ALJ observed, however, that plaintiff used her right arm to pull out her chair upon arrival at her 1999 administrative hearing. [Tr. 173]. Plaintiff continues to allege disabling neck and shoulder pain. [Tr. 217].

III.

*Medical Evidence*

A. <u>Prior to the ALJ's 1999 Decision</u>

According to the records of Dr. Knickerbocker, a 1984 motor vehicle accident resulted in minimal displacement at C4-5. [Tr. 120]. Over the next year, plaintiff continued to complain of stiffness in her neck. [Tr. 120]. Dr. Knickerbocker "suspect[ed] that she is going to have some permanent disability from this problem." [Tr. 120].

July 1985 tomograms indicated "a fracture of the facet of C4 with anterior subluxation of the remaining facet of C4 in relation to C5." [Tr. 118]. Dr. Knickerbocker and Dr. J.A. Pettigrew opined that plaintiff's injury could be causing some nerve root impingement. [Tr. 117, 124]. Dr. Knickerbocker noted that "[w]e will follow her on an as-needed basis but I explained to the patient that if she has an acute exacerbation of her pain she can check back with us." [Tr. 117]. In 1986, Dr. Knickerbocker wrote "to whom it may

4

concern" that "[s]he will have right arm pain which is exacerbated by activity that requires her to pull or push or if she has to lift with the arm. . . . I think she can handle work activity that does not require her to use her arm above the shoulder level or any repetitive pushing, pulling or lifting." [Tr. 121].

A 1986 examination by orthopedist Neal Jewell was "entirely unremarkable" except for "mild cervical degenerative arthritis." [Tr. 126]. Following a 1987 consultative examination, orthopedist Robert Patterson wrote that plaintiff's "neck and low back problems limit her abilities to stand and walk, lift and carry, and handle objects." [Tr. 143].

Plaintiff did not see Dr. Knickerbocker again until 1989, when she complained of shoulder pain secondary to a fall. [Tr. 116]. Over the course of four appointments in six weeks, Dr. Knickerbocker noted stiffness and reduced range of motion. [Tr. 116]. He scheduled plaintiff for a follow-up appointment three weeks later. That appointment was "broken" by plaintiff, with no further treatment. [Tr. 116].

Plaintiff did not see Dr. Knickerbocker again until six years later, in 1995. She complained "of a problem with her left wrist which has been bothering her for about a month since trying to lift a heavy object out of a tank." [Tr. 116]. Dr. Knickerbocker found "quite a bit of tenderness" and performed an injection. [Tr. 115-16]. The record reflects no further treatment for this injury.

Dr. Karl Konrad performed a consultative examination in 1997. Although plaintiff continued to report pain, stiffness, and occasional numbness, Dr. Konrad's physical

examination showed:

> <u>Joints</u> Full range of movement all joints. No tenderness, heat, swelling or deformity in any joint.
>
> <u>Neck</u> Supple with full range of motion.
>
> <u>Back</u> No kyphosis. No scoliosis. No scars. Normal lumbar flexure. No tenderness. No muscle spasm. Full [range of motion]. Straight leg raises negative.
>
> . . .
>
> <u>Gait</u> Walks unassisted without a limp. Tandem walks.
>
> <u>Strength</u> 5/5 upper & lower extremities, and grip. No asymmetrical muscle wasting. Bears weight on each leg separately. Patient walks on toes and heels.

[Tr. 127-28]. Additionally, x-rays of the lumbar spine were deemed "normal." Based on the x-rays and his examination, Dr. Konrad opined that plaintiff "has no impairment-related physical limitations." [Tr. 129].

Following the discontinuation of her benefits, plaintiff began seeking regular medical treatment for complaints of neck, arm, and low back pain. [Tr. 150-57]. An August 1998 MRI indicated degenerative disc disease at C4-5 and C5-6, with minimal disc bulging and minimal impact upon the dural sac. [Tr. 158].

In January 1999, plaintiff's counsel submitted two written questions to Dr. Knickerbocker. In response, Dr. Knickerbocker opined that there had been no medical improvement affecting the repetitive use of plaintiff's right arm, and that plaintiff thus remained limited regarding lifting and repetitive use of that extremity. [Tr. 162].

6

### B. Evidence Subject to the Court's 2000 Remand

Plaintiff returned to Dr. Knickerbocker's office in March 1998 "on referral . . . for evaluation of her neck and lower back." [Tr. 252]. Following a recitation of plaintiff's subjective complaints, Dr. Knickerbocker recorded his findings as follows.

> On exam, the patient grossly has a normal curvature of her spine. She does have some sensitivity to palpation in the lower lumbar region and at the base of her neck. She has almost normal ROM but some pain with full flexion and full extension. Exam of her neck reveals good flexion and extension and lateral rotation to the left but she is limited in lateral rotation to the right to about 30 degrees. . . . Reflexes to her legs are intact and symmetrical. No significant sensory deficit and no motor weakness detected. Reflexes to her arms are intact and symmetrical with no significant sensory deficit and no motor weakness.
>
> We x-rayed her cervical spine and lumbar spine. Lumbar spine films are unremarkable except for mild degenerative spurring. Cervical spine x-rays does [sic] show evidence of the old facet fracture at the 4-5 level which has actually fused and I feel that the subluxation she had of C4 over C5 is stable at this time. She also has some mild degenerative changes to the cervical spine.

[Tr. 252]. Dr. Knickerbocker opined that "her problem may be more of a" chronic muscular inflammation. [Tr. 253]. Plaintiff denied any pain radiating into her legs or arms. [Tr. 252].

### IV.

*Applicable Legal Standards*

This court's review is confined to whether the ALJ applied the correct legal standards and whether his factual findings were supported by substantial evidence. 42 U.S.C. § 405(g); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).

A claimant is entitled to disability insurance payments if he (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application for disability insurance benefits, and (4) is under a disability. 42 U.S.C. § 423(a)(1). "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423 (d)(2)(A). Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiffs bear the burden of proof during the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *See id*.

V.

*Analysis*

The substantial evidence standard of review grants ALJs "a zone of choice" within which they can weigh conflicting evidence. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). Plaintiff correctly argues that a reasonable fact-finder could have credited her subjective complaints and/or the 1999 check-a-box conclusions of Dr. Knickerbocker. However, a fact-finder could also have reasonably rejected both based on the present record.

As noted by the ALJ, plaintiff has sought minimal treatment for her complaints since 1988. [Tr. 194, 198]. For the reasons already discussed, her contention that she cannot afford medical care is not credible. *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 477, 480-81 (6th Cir. 1988). As further observed by the ALJ, plaintiff's credibility is impacted by the fact that it was not until after the notification of benefits cessation that she: (1) sought regular medical care; (2) obtained prescription pain medication; and (3) purportedly became less able to engage in activities such as fishing. [Tr. 198].

As noted by the ALJ, Dr. Konrad's 1997 consultative examination "was completely unremarkable." [Tr. 195]. Although plaintiff alleges that Dr. Konrad is not an orthopedic specialist, there is no indication that he is unqualified to perform a physical examination or read an x-ray. Dr. Konrad's conclusion that plaintiff "has no impairment-related physical limitations" was based on objective evidence. [Tr. 127-29].

As noted by the ALJ, plaintiff's post-1997 medical treatment generated only minimal findings. [Tr. 195]. Specifically, the 1998 record of Dr. Knickerbocker documents only mild degenerative changes, with stability and improvement noted regarding her prior injury. [Tr. 252]. Plaintiff further denied any pain radiating into her arms. [Tr. 252].

Substantial evidence supports the ALJ's rejection of Dr. Knickerbocker's 1999 check-a-box form. As stated by the ALJ,

10

> Those statements are not consistent with the medical evidence of record and, in particular, with Dr. Knickerbocker's treatment record of March 31, 1998, which documents no significant functional restrictions and specifically documents that the claimant no longer experienced decreased sensation and decreased grip of the right upper extremity. Further, the claimant reported on that date that she no longer experienced radiation of pain into her upper or lower extremities. The record further documents that the claimant has required no chronic or ongoing treatment related to any complaint, including[] back, neck and right arm problems. Thus, Dr. Knickerbocker's statements are of little probative value.

[Tr. 197].

In sum, there is new and material evidence to substantially support the conclusion that plaintiff now suffers from only a slight impairment. A claimant fails at step two if she does not demonstrate an "impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c).

"The main thrust of plaintiff's argument[s] can be summarized in one sentence: '[S]ubstantial evidence contradicts the [Commissioner's] findings . . ..' While this may indeed be true, it is also true that substantial evidence supports the [Commissioner's] finding[s]." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir.1993). Given the applicable standard of review, the final decision of the Commissioner must be affirmed. *See id.* A decision of the Commissioner is not subject to reversal merely because a reasonable mind could have reached the opposite conclusion. *See, e.g., Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).

An order consistent with this opinion will be entered.


ENTER:



　　　　　　　s/ Leon Jordan　　　　
United States District Judge